Virginia S. SHARP, Administratrix of the Estate of Charles William Sharp, Deceased, Appellant,

v.

GULF, MOBILE & OHIO RAILROAD COMPANY, a Corporation, and Baltimore & Ohio Railroad Company, a Corporation, Respondents.

No. 47722.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Hullverson, Richardson & Hullverson, Barney J. Gissenaas, St. Louis, for appellant.

Robert C. Ely, St. Louis, for respondents.

JAMES W. BROADDUS, Special Judge.

Plaintiff sued defendant railroads for damages for the wrongful death of her husband, Charles William Sharp under the Federal Employers' Liability Act, 45 U.S. C.A. § 51 et seq. Plaintiff is the administratrix of deceased's estate. She sought damages in the amount of $175,000. The jury returned a verdict for defendants and plaintiff has appealed.

Sharp was foreman of a crew of switchmen instructed on the night of May 3, 1957, to remove a string of cars standing on a track known as the "Converse Lead" and to connect that string of cars with an engine and caboose and move the train to a station on the main line of the B & O. The Converse Lead, located at the outer edge of Springfield, Illinois, is a spur track which runs from its end at a brick factory in a northerly direction. After crossing Rochester Road the Converse Lead turns to the left and runs in a northwest direction until it connects with the B & O main line. Rochester Road crosses the Converse Lead running in a northwest to southeast direction, thus intersecting the north-south tracks at an angle. The standing cars which Sharp and the crew were to remove from the Converse Lead were south

of the crossing of Rochester Road, and therefore were required to be moved across that crossing in order to place them on the main line of the B & O.

The crew assigned this duty was composed of three switchmen, an engineer, and a fireman. After placing a caboose and two cars on the B & O main line, an engine was backed down the Converse Lead across the Rochester Road crossing, and coupled to a string of cars. The fireman and engineer remained inside the engine cab. One switchman stayed with the caboose on the main line while the engine moved onto the Converse Lead to get the other cars. When it reached the string of cars the engine was south or past the Rochester Road crossing; its front end was about six feet from the road. The second switchman rode with the engine down to the string of cars, coupled the engine to the cars, and remained on the east side of the train. The third switchman was Sharp; he rode with the engine to the string of cars, got off the train and remained on the ground. When last seen Sharp was standing just off the south shoulder of Rochester Road, four to six feet from the edge of the pavement, and four to five feet from the moving train. Sharp was booking the cars, i. e., making a written list of the letter and number identification marks on the cars. He had a switchman's electric lantern, and in order to do his job it was necessary for him to shine the lantern on the cars as they passed him. There were approximately 25 cars in the string.

This switching movement was done at approximately 11:00 p. m. It was a dark night. The crossing of Converse Lead and Rochester Road was marked with a cross-arm railroad sign at the crossing itself, and there was a railroad warning sign on Rochester Road at a point 520 feet west of the crossing. There were no flashing signals, lights, flares, stationary bells, or other such warning equipment at the crossing.

While standing west of the train and near the south edge of the pavement of Rochester Road Sharp was struck and fatally injured by an automobile operated by William McCoy. McCoy's car came from the west toward the crossing, and Rochester Road lies in a straight line westwardly from the crossing at least 500 feet. According to McCoy, when he reached a point approximately 25 to 30 yards from the crossing he for the first time saw the train on the crossing and saw a man standing in front of the train. McCoy braked his car and turned to the right, but collided with Sharp and the train. McCoy's automobile left skid marks 82 feet 1 inch in length, which began approximately in the center, or left of the center of Rochester Road, and then veered to the right, one mark ending at the edge of the pavement where a wheel mark extended two more feet in the dirt of the shoulder. The skid marks ended 10 or 12 feet from the railroad tracks. The automobile struck the train, causing damage to two red or orange boxcars, and after striking the train was carried north by the motion of the train, coming finally to rest in the north half of the Rochester Road pavement. Sharp was lying across the trunk of McCoy's automobile.

At the time of the accident McCoy was 16 years of age. He was very familiar with the presence and location of the railroad crossing, going over it practically every day for six or seven months previous to the accident. He told the state trooper shortly following the accident that he had one and one-half bottles of beer to drink just before the collision.

There was a suit filed in Springfield, Illinois, by this same plaintiff against McCoy, in which it was alleged that McCoy "recklessly, willfully or wantonly * * * drove said automobile," and that his "acts and omissions were the proximate cause of said Sharp losing his life." That suit was settled by a payment of $8,750 on behalf of McCoy to plaintiff.

The evidence shows that employees performing the job that Sharp was performing on the occasion of this accident could choose the place where they would stand alongside the tracks in order to check the cars, and that such place was not necessarily at or near the crossing but could be anywhere from the crossing all the way up to the main switch, 1,000 feet or more from the crossing.

Plaintiff submitted her case to the jury on the theory that defendants were negligent in failing to give motorists on Rochester Road an adequate warning of the approach and presence of the train on the Converse Lead crossing, and that as a result the driver McCoy did not discover the presence of the train until he was too close to be able to avoid the collision.

■ Plaintiff's first contention is that the court erred in giving Instruction No. 3, at defendants' request. The instruction reads as follows:

"Plaintiff claims that defendants were negligent because there were no signal or lights at the railroad crossing to warn approaching motorists of the presence of the train and Mr. Sharp. In this respect you are instructed that defendants were not required to furnish absolute protection for William Sharp at whatever position he might have chosen to place himself to book the railroad cars on the occasion in question but they were required to furnish him a reasonably safe place to work. If you find from the evidence that men performing the same work as Mr. Sharp was performing on the occasion in question could place themselves with safety at various places where they would be in no danger of being struck by an automobile and where they would be able to safely book the cars and board the train and perform their required duties and that defendants knew of this and if you find that under these

circumstances reasonable care of defendants would not have required such devices to be placed at the crossing for protection of employees who were booking railroad cars under the same or similar circumstances as were present on the occasion in question, then you are instructed that as to such claim of negligence your decision shall be in favor of defendants."

Plaintiff says that the instruction erroneously "limited plaintiff's charge of negligence," because it dealt only with plaintiff's claim that defendants were negligent through failure to properly protect the crossing by devices placed at the crossing. We agree with the rule set out in the cases cited by plaintiff, but disagree with plaintiff's interpretation of the instruction. Plaintiff interprets the instruction to be one which directs a verdict for defendants on the whole case. Specifically, the instruction does not direct a verdict on the whole case, but instead tells the jury that as to the claim of negligence described in the instruction their decision shall be in favor of defendants.

Beginning with the original petition, plaintiff alleged that defendants failed to light the crossing, or install devices at the crossing. Also, in July, 1958, plaintiff filed an amendment which was specifically directed to a claim of negligence in failing to provide lights, warnings, signals, et cetera, at the crossing to advise of the presence of the train and of plaintiff's decedent. Then in February, 1959, plaintiff filed an amended petition, and in paragraph 4 alleged that the crossing was dark and unlighted and particularly alleged that "both defendants negligently and carelessly failed to illuminate plaintiff's deceased or his working place and the cars while plaintiff's deceased was engaged in his duties so that approaching motorists would be advised of the presence of said cars and plaintiff's deceased."

Throughout the trial of the case plaintiff directed the evidence toward failure of defendants to place various devices at the

crossing, such as floodlights, flasher signals, wigwag signals or bells.

Plaintiff's attorney read to the jury interrogatories and answers by defendants which were directed toward lack of floodlights, lights of any kind, bells, signals or methods of illuminating the crossing or persons working at the crossing, the cost of installing floodlights to illuminate the crossing and persons working there, whether defendants have employees who could install wiring and floodlights, and particularly No. 7 which asked: "Had the question of installing signals or illumination of the crossing referred to, or possible hazards to employees there, ever been discussed in safety committee meetings" of defendants. And all of the testimony of an expert witness produced by plaintiff was directed toward placing a signal device at the crossing.

An alleged failure of defendants to exercise reasonable care to prepare the crossing so as to make it reasonably safe is one matter, which involves planning ahead by defendants. An alleged failure of individual crew members to fulfill their duty at the moment of the accident, such as a failure to blow a whistle, to have the headlight on the engine burning, or to place flares on the boxcar or elsewhere, is a momentary lapse of an individual and is an entirely different concept of negligence. Instruction No. 3 was directed only toward the claim and the evidence presented on it, that defendants failed to plan ahead and put devices at the crossing, such as floodlights, flashers, bells or other warning devices. An alleged failure of an individual worker in his duty would be foreign to this issue. This submission in the instruction was exactly the claim being pointed up by plaintiff's attorney when he read to the jury interrogatory 7, which specifically referred to the alleged failure of defendants to plan ahead to eliminate possible hazards to employees at the crossing.

In the instruction defendants separately submitted a defense to the charge of negligence made against them throughout the evidence regarding a failure of defendants to plan ahead as to possible hazards, and a favorable finding for defendants as to that issue presented in the instruction did not, by the instruction, require a verdict on the whole case but only allowed a favorable finding on the limited issue. It is proper to have an instruction in that form, and error would result only if the submission took the extra step of directing a verdict on the whole case, which this instruction did not do. Sauer v. Winkler, Mo.Sup., 263 S.W.2d 370, 373.

█ Plaintiff also complains of the fact that the instruction referred to an alleged failure to warn motorists of the "presence of the train and Mr. Sharp." This was the manner in which plaintiff's case was pleaded on the issue. A submission in regard to warning motorists of the presence of Mr. Sharp, as well as the train, would not mislead the jury into believing that plaintiff's only submission of negligence was a failure to provide a floodlight to illuminate Mr. Sharp. After all, an approaching motorist who was aware of the train on the crossing would not smash into the train just because he did not see a man standing alongside the train. In this case, Mr. Sharp was more or less synonymous with the train—they were a team, or each was an interrelated part of a whole. The instruction was designed to fit the facts and pleadings of this case, which facts included that when the errant driver, McCoy, smashed into the train, he also smashed into Mr. Sharp who was alongside the train and a part of the train's crew.

█ Plaintiff's next complaint discloses that she has interpreted the instruction to submit the question of whether or not the crossing was reasonably safe. The instruction does not submit the safety of the crossing but instead submits the question of reasonable care of defendants, as follows: " * * * under these circumstances reasonable care of defendants would not have required that such devices be placed at the crossing." A reading of the

instruction clearly shows that the matter for the jury to decide was whether defendants had exercised reasonable care in planning ahead as to how they would lay out the place of work for employees who would be booking railroad cars in that area, which as a place of work included places other than the crossing.

Plaintiff cites the case of Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497. In her brief plaintiff cites that case as holding "that the employer has a duty to make reasonably safe every place where the employee has a right to be in the performance of his duties." What the Wilkerson case does say is that it is a question for the jury as to what reasonable care of defendants requires: "But the issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances." 69 S.Ct. loc. cit. 417. Plaintiff also cites the case of Scneder v. Wabash R. Co., Mo.Sup., 272 S.W.2d 198. It likewise does not support her contention.

■ Plaintiff's final complaint is that the instruction injected assumption of risk and contributory negligence into the case as complete defenses to plaintiff's claim by permitting the jury to find defendants not negligent if Sharp could have selected a safe place to stand and book cars. Plaintiff has attempted to put an interpretation on the instruction which is not warranted. What the instruction does is to submit to the jury whether "reasonable care of defendants (would or) would not have required that (illuminating or warning) devices be placed at the crossing." The instruction properly tells the jury that in reaching a decision on the question they shall consider the prior knowledge of defendants regarding the duties of their employees and the condition in the area where they worked. Plaintiff interprets the instruction to be a submission concerned with the actions or decisions of Sharp. This is not correct, and, in fact,

Sharp is mentioned only as a means of describing the work which was to be done so that the instruction could then direct the jury's attention to the question of the reasonable care of defendants regarding places where the work was or could be done. We find no error prejudicial to plaintiff resulting from the giving of the instruction.

Plaintiff also contends that the court erred in giving Instruction No. 7, which reads as follows:

"The Court instructs the jury that if you find and believe from the evidence that William McCoy, driver of the automobile which struck Mr. Sharp, drove his automobile toward the crossing at a dangerous and excessive rate of speed under the circumstances, and if you find that his speed was such that upon his discovery of Mr. Sharp and that there was a train passing over the crossing he was unable to stop his automobile before striking Mr. Sharp and the train, and if you find that William McCoy was negligent in so driving his automobile and that his negligence was the sole cause of the death of Mr. Sharp, and the defendants were not negligent, then you are instructed that plaintiff cannot recover in this case, and your verdict shall be in favor of defendants."

Plaintiff's first attack upon this instruction is that it submitted "only McCoy's speed in the last few seconds." In support of her contention plaintiff cites two cases. The first, Reiling v. Russell, 345 Mo. 517, 134 S.W.2d 33, held that a sole cause instruction in a humanitarian case was erroneous because it misled the jury to believe that a verdict for defendant was authorized if defendant did not see plaintiff's position of peril in time to avoid the accident, even though the jury *did* find that by the exercise of the highest degree of care defendant could have discovered the position of peril in time to have avoided the accident. In other words, the instruction left out discoverable peril and dealt only with discovered peril. This is not the point at all in the case

at bar. The second case, Toburen v. Carter, Mo.Sup., 273 S.W.2d 161, is also foreign to the issue here. That was a case where the plaintiff was a guest in a car being driven by her husband. The instruction there involved was held to be erroneous in placing upon plaintiff the absolute duty to warn her husband if she could have seen defendant's car in time to enable him to avoid striking it; whereas, it was her duty only to warn him if and when, in the exercise of ordinary care, it became reasonably manifest to her that there was danger of a collision.

■ In the instant case McCoy, the driver of the car, was very familiar with the presence and location of the railroad crossing. The law is well settled that a motorist approaching a known railroad crossing is required to anticipate that there might be cars or trains upon the crossing at any time, and to regulate the speed of his automobile accordingly. Kocour v. Mills, 23 Ill.App.2d 305, 162 N.E.2d 497; Fitzpatrick v. Kansas City Southern R. Co., 347 Mo. 57, 146 S.W.2d 560, 567, 568. Plaintiff's attorney admitted that McCoy was driving too fast. And plaintiff had previously received $8,750 in settlement of her suit against McCoy in which she had alleged that his negligence was the proximate cause of Sharp's death, which can only be interpreted as an admission that McCoy was traveling at a negligent rate of speed.

■ As we view it, the instruction is not worded to limit the consideration of McCoy's speed only to the time following his discovery of the presence of Sharp. Instead, the speed at the time of his discovery is used as a description of McCoy's excessive speed prior to reaching the point of discovery. In other words, his speed before then was so excessive that when he *did* reach that point of discovery, it was too late for him to do anything about it, meaning that he was negligent in not slowing down before then in anticipation of what might be at the crossing.

■ Plaintiff also complains that the instruction ignores all the various items which plaintiff claims constituted negligence of defendants. According to what has been referred to as the leading case on the subject (Borgstede v. Waldbauer, 337 Mo. 1205, 1216, 88 S.W.2d 373, 378): "A defendant is not obliged to include in his instruction facts relied on by the plaintiff for a recovery."

■ Plaintiff also claims that the instruction does not submit sufficient facts upon which a jury might find that defendants were not negligent. In support of this contention she cites the case of Ilgenfritz v. Quinn, Mo.Sup., 318 S.W.2d 186. The plaintiff in that case was injured when the automobile in which he was riding overtook and collided with a truck in a rear-end collision. Plaintiff submitted his case against the overtaking driver (Carskadon) on the theory of excessive speed and against the truck driver (Quinn) on the theory that he failed to give a hand signal before starting to turn. The truck driver's sole cause instruction was held to be erroneous for its failure to require the jury to find that a hand signal would not have been seen and would have been useless. The instant case presents an entirely different situation. Here we have a motorist approaching at high speed a railroad crossing the existence of which was well known to him.

Plaintiff also cites the case of Long v. Mild, 347 Mo. 1002, 149 S.W.2d 853, 858. That case holds the sole cause submission of excessive speed of the driver of plaintiff's automobile to be erroneous because there was a controversy in the case as to whether defendant's car was "completely off the highway" when the collision occurred, and the instruction should have included a finding on that controversy. The opinion did say, "No doubt excessive speed might have been properly submitted as the single sole cause negligence." In the case at bar, there was *no* controversy as to the facts concerning the accident, and thus the ruling in the Long case does not apply here. Plaintiff also cites three other cases. A reading of those cases will disclose that they also are

readily distinguishable from the case at bar. As we view it, the instruction contains no error prejudicial to plaintiff.

The judgment should be affirmed. It is so ordered.

LEEDY, P. J., and EAGER and STORCKMAN, JJ., concur.