

# In the
# Missouri Court of Appeals
## Western District

AMIE WIELAND,

               Respondent,

v.

OWNER OPERATOR SERVICES, INC.,

               Appellant.

WD79414

OPINION FILED:

December 13, 2016

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Jack R. Grate, Judge**

**Before Division Three:**
**Alok Ahuja, P.J., Thomas H. Newton, and James Edward Welsh, JJ.**

Owner-Operator Services, Inc. ("OOSI") appeals the amended judgment of the circuit court in favor of Amie Wieland on her claim of negligence following a jury trial. OOSI contends that the circuit court erred in giving Wieland's verdict director, Instruction Number 6, because substantial evidence did not exist establishing her claim under the specific harm exception to the general premises liability rule that a business owner does not owe a duty to protect a business invitee from the criminal acts of third parties. OOSI also contends that the circuit court erred in allowing Wieland to argue in closing argument a duty of care and a breach of that duty of care that went outside the scope of Instruction Number 6. We affirm the circuit court's judgment.

The evidence established that Wieland began working for OOSI as a truck insurance agent support specialist in October of 2012. OOSI is a subsidiary of Owner-Operator Independent Drivers Association ("OOIDA") that manages the for-profit business of OOIDA. National headquarters for OOIDA and OOSI were located in Grain Valley on the same campus, across the street diagonally from the police station.[1] The campus had a number of security cameras with various views of the parking lot. The monitors for those cameras were not actively manned at all times or watched with any particular regularity. Their purpose, according to OOSI's President, was deterrent and to keep a record of what did happen in the parking lot.

Suzanne Layton was the director of human resources at OOSI during Wieland's employment with OOSI. Layton's role at OOSI included assisting employees if they had any domestic concerns or concerns about ex parte orders. The standard practice in that situation was to gather as much information as possible and then, on a case by case basis (accounting for privacy concerns), get copies of any legal documents such as restraining orders, get a photograph of the person against whom the employee had a restraining order, and give the photo and description of that person to the front desk. The reason for giving the photo and description to the front desk personnel was that everyone entering the front doors was to show a badge to front desk personnel, and all other doors were secured.

Layton was also in charge of facilitating employees' receipt of legal documents if delivered to them at work during business hours. She did so when Alan Lovelace, former domestic partner of Wieland, served Wieland with an ex parte order of protection at OOSI on November 6, 2012. Wieland seemed concerned to Layton, and Wieland explained to Layton that

---

[1]In the proceedings below, OOIDA was used to refer to defendant OOSI. In this opinion, "OOSI" is used to refer to appellant OOSI.

2

the accusations leveled in the order were in fact things Lovelace had been doing to her. The accusations specifically included coercing, stalking, harassing, and sexually assaulting. Wieland told Layton that Lovelace was "scaring" her, that she was not sure what he would do, and that she felt threatened. At some point, Wieland also told Layton that Lovelace was leaving her harassing voicemails on her cell phone while she was at work. Wieland expressed to Layton that she was concerned about Lovelace, and Layton understood that to be a safety concern.

In keeping with company protocol, Layton asked Wieland to provide her with a description and photograph of Lovelace, which Wieland did. Layton gave the description and photograph to the front desk supervisor for dissemination to front desk personnel. Further, when an employee was concerned about his or her safety at work, company protocol also included offering that employee a parking spot close to the front of the building. OOSI, however, never offered Wieland a closer parking spot. Wieland's expert witness, John Roberts, a security consultant, testified that OOSI's protocol and procedure when handling ex parte situations also included offering employees escorts to their vehicles.

Layton and Jack Garringer were co-chairs of "Team 9," a volunteer security team managed by OOSI. Team 9 was a group of safety and security people whose role was "to be present if something happens and, through that presence, help to cool any activity that might occur." Layton believed she discussed Wieland's concerns about Lovelace with Team 9 but could not recall whether or not she shared the photo of Lovelace with Team 9.

On November 20, 2012, a hearing was held on Lovelace's ex parte order against Wieland. Wieland returned to work from the hearing and told Layton and other OOSI employees that Lovelace did not appear and that the order was dismissed. Wieland, however, told Layton that Lovelace continued to contact and harass her. Layton asked if Wieland was fearful, and Wieland

3

said that she was. Layton asked Wieland if she thought Lovelace would show up at OOSI, and Wieland said that she did not know.

Later that same day, video of the parking lot showed that someone entered Wieland's vehicle about an hour before she got off work. Wieland clocked out of work at about 5:40 p.m. and walked to her vehicle. When she began unlocking the driver's side door to get in, she noticed the door was unlocked and saw Lovelace jump from the middle seat to the back seat. Wieland told Lovelace to get out of her car, closed the door, and started walking back toward the OOSI building. Lovelace exited the vehicle, walked after Wieland, and, within twenty seconds, was directly behind her and shot her in the back of her head. Wieland was severely injured but survived the shooting.

Wieland filed a petition against OOSI claiming negligence. After a six-day trial, Wieland's claim was submitted to the jury on the theory that OOSI breached its duty as a business owner owed to Wieland as an invitee to exercise ordinary care to protect her from Lovelace. The jury returned a verdict in favor of Wieland, awarding damages of $3,250,000. OOSI appeals.

In its first point on appeal, OOSI contends that the circuit court erred in giving Wieland's verdict director, Instruction Number 6, because substantial evidence did not exist establishing her claim under the specific harm exception to the general premises liability rule that a business owner does not owe a duty to protect a business invitee from the criminal acts of third parties. OOSI argues that the specific harm exception is a specific test and that evidence OOSI "'could have known' Lovelace was in the parking lot in time to have prevented the shooting if it had taken various precautionary actions to protect her as part of its protocol to protect employees involved in domestic abuse disputes . . . *before* Lovelace had entered the parking lot" was not

4

admissible or relevant. OOSI asserts that, under the specific harm exception, a duty of care does not arise "until *after* the *known* third party has entered the premises." OOSI claims, therefore, that Wieland had to present substantial evidence from which the jury could find that OOSI actually "knew that Lovelace was in the parking lot;" "that, when OOSI became aware of Lovelace's presence in the parking lot, it knew that he posed a danger to Wieland;" and that "there was sufficient time thereafter for OOSI to take action that could have prevented Wieland from being shot."

Rule 70.02(a) dictates that jury instructions "shall be given or refused by the court according to the law and the evidence in the case." Whether the jury was properly instructed is a question of law upon which the circuit court is entitled to little deference. *Nagaragadde v. Pandurangi*, 216 S.W.3d 241, 244 (Mo. App. 2007). In determining whether the jury was properly instructed, we view the evidence and inferences in the light most favorable to the submission of the instruction on any theory supported by the evidence and disregard all contrary evidence and inferences. *Id.*; *Wright v. Barr*, 62 S.W.3d 509, 526 (Mo. App. 2001). Any issue submitted in a challenged instruction must be supported by substantial evidence from which the jury could reasonably find or infer that issue. *Rider v. The Young Men's Christian Ass'n of Kansas City*, 460 S.W.3d 378, 383 (Mo. App. 2015).

To succeed on a claim of negligence, the plaintiff must show (1) that the defendant had a duty to protect the plaintiff from injury, (2) that the defendant failed to perform that duty, and (3) that the defendant's failure to perform that duty proximately caused (4) injury to the plaintiff. *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 257 (Mo. banc 2002). The existence of a duty is a question of law and is premised upon foreseeability. *Id.*

Generally, a business owner has no duty to protect its business invitees from the criminal acts of unknown third parties because such activities are rarely foreseeable. *Id.*

Courts, however, have recognized two "special facts and circumstances" exceptions to the general rule that businesses generally have no duty to protect invitees from criminal acts of third persons. *Id*. "Under the first exception, 'the duty may arise when a person, known to be violent, is present on the premises or an individual is present who has conducted himself so as to indicate danger and sufficient time exists to prevent injury.'" *Id.* (quoting *Faheen v. City Parking Corp.*, 734 S.W.2d 270, 272-73 (Mo. App. 1987)). "The other exception recognizes 'a duty [on the part of business owners] to protect their invitees from the criminal attacks of unknown third persons' under certain special circumstances," and, under such exception, "'[a] duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury.'" *L.A.C.*, 75 S.W.3d at 257 (quoting *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 62 (Mo. banc 1988)).

In regard to the second exception, commentators and Missouri courts have attempted to categorize the precise requirements of the exception by looking at "prior specific incidents, " the "totality of the circumstances," and a "balancing test" in regard to foreseeability. *Id*. at 258. The *L.A.C.* court, however, stated that it was unnecessary to "enter the fray concerning whether a 'prior similar incidents,' 'totality of the circumstances' or a 'balancing' test be adopted[.]" *Id*. The court noted that the "adoption of any of these approaches is less helpful than simply utilizing traditional tort language" and that "[a] traditional tort approach recognizes that both duty and breach adapt to the precise situation of the case[.]" *Id*. The same is true in this case.

Instruction Number 6 contained the verdict director for Wieland's negligence claim against OOSI. The instruction stated:

6

Your verdict must be for plaintiff Amie Wieland if you believe:

First, that Alan Lovelace was present in defendant's parking lot on November 20, 2012 and he posed a danger to plaintiff, and

Second, that defendant knew or by using ordinary care could have known that Alan Lovelace was in its parking lot and posed a danger to plaintiff, and

Third, that defendant failed to use ordinary care to notify law enforcement authorities when the risk of danger to plaintiff became apparent, and

Fourth, that defendant was thereby negligent, and

Fifth, that sufficient time existed within which to prevent injury to plaintiff after defendant knew or by using ordinary care could have known that Alan Lovelace was in its parking lot and posed a danger to plaintiff, and

Sixth, such negligence of defendant combined with the acts of Alan Lovelace to directly cause damage to plaintiff.

OOSI complains that insufficient evidence existed from which the jury could find that OOSI actually knew or, by using ordinary care, could have known that Lovelace was in the parking lot in time to have called law enforcement authorities to prevent the shooting. We disagree.

OOSI does not challenge the wording of Instruction Number 6, including the language of paragraph second and fifth, which references the time when, "by using ordinary care[,] [OOSI] could have known" of Lovelace's presence in the parking lot. OOSI also does not challenge the sufficiency of the evidence that the circumstances known to it prior to Lovelace's arrival should have caused it to exercise increased vigilance; nor does OOSI challenge Wieland's arguments as to specific actions OOSI should have taken prior to Lovelace's arrival, which would have enabled it to detect him. Instead, OOSI's submissibility argument rests on the premise that, as a matter of law, it had no duty to take *any* actions until Lovelace was actually present on its property.

7

OOSI emphasizes repeatedly that, "applying the correct legal standard of the duty of care owed under the [specific harm exception], only those facts and circumstances as they existed *after* Lovelace entered the premises could be considered in determining when OOSI was put on notice of Lovelace's presence" and that, "under the [specific harm exception,] the duty does not arise until *after* a known, dangerous third party actually enters upon the premises and the business owner becomes aware of that party's presence." OOSI insists that *actual knowledge* of Lovelace's presence and danger to Wieland was required. The "special facts and circumstances" exception creating a duty on the part of a business owner, however, like any duty arising under traditional tort framework, is premised upon *foreseeability*, not actual knowledge. *L.A.C.*, 75 S.W.3d at 257.

The argument that, because the duty of care under the "special facts and circumstances" exception does not arise until after the known third person is present on the premises, all evidence of any facts and circumstances before that moment are irrelevant and inadmissible is without merit. This argument ignores that the exception is explicitly one that arises from "*special facts and circumstances*." Indeed, OOSI concedes that a business owner has no duty to exercise any care to protect invites until it "realizes, or should realize, through special facts within his knowledge, that criminal acts of a third party are occurring or are about to occur on his premises." *Nappier v. Kincaid*, 666 S.W.2d 858, 860 (Mo. App. 1984); *see also Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 61 n.6 (Mo. App. 2002) (duty arises when the business owner "knows or has reason to know that the acts of the third person are occurring, or about to occur). OOSI also concedes that the "could have known" language used in the instruction "correctly instructs upon the requisite [specific harm e]xception burden of care." It is illogical to exclude as irrelevant all "special facts and circumstances" that exist or occur before the arrival of the

8

third person.  The special facts and circumstances existing before the arrival of the third person inform the legal determination of whether a duty arises at that person's arrival on the premises and what the nature of that duty is.  The timing of the duty arising does not so narrowly restrict what facts and circumstances are relevant to determining the duty's existence and nature.  Again, "'[t]he touchstone for the creation of a duty is foreseeability.'" *Richardson*, 81 S.W.3d at 59 (citation omitted).  The "'duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omission will cause harm or injury.'" *Id*. (citation omitted).

Indeed, M.A.I. 22.03, which instructs in circumstances when an invitee is injured on the premises of a business owner and after which Instruction Number 6 in the instant case was patterned, contains Committee Comment C, which reads:

> The 1995 Revision to this instruction changed the phrase "should have known" to "could have known" on the issue of constructive notice.  Some MAI instructions had used one of the phrases and other instructions had used the other phrase.  Questions had arisen as to whether "should have known" imposed a higher burden than "could have known".  See Benton v. City of Rolla, 872 S.W.2d 882 (Mo. App. 1994), and Burrell v. Mayfair-Lennox Hotels, Inc., 442 S.W.2d 47 (Mo. 1969).  For consistency, the Committee has opted to use the phrase "could have known" to the extent possible in the context of constructive notice. Other instructions, such as MAI 10.07, paragraph Second of MAI 22.01, MAI 22.07, and MAI 25.10(A), continue to use the phrase "should have known" because that phrase is part of a "knew or had reason to know" standard as explained in the Committee Comments to those instructions.

Based on the foregoing, we reject OOSI's contention that "only the facts and circumstances that existed at the time Lovelace entered the parking lot would be relevant in determining whether OOSI could have known of Lovelace's presence in time thereafter to have prevented the shooting."  To the contrary, we conclude that the jury was entitled to consider OOSI's pre-existing knowledge, and the actions it should have taken in the exercise of ordinary care based on the knowledge, in determining when OOSI could have known of Lovelace's

9

arrival. As we have indicated, OOSI does not challenge the sufficiency of the evidence that Wieland presented to prove that OOSI should have taken additional measures which would have permitted it to detect Lovelace's presence or the additional actions Wieland alleges that OOSI should have taken. That evidence included evidence of OOSI's own security protocols, which had been designed to address domestic violence situations like the one Wieland was facing, the presence of security cameras in the parking lot, and the availability of extra police patrols if they had been requested.[2] The jury was entitled to consider such evidence in determining when OOSI could have known of Lovelace's arrival in the parking lot.

OOSI relies on *Nappier v. Kincaid*, 666 S.W.2d at 860, in support of its contention that the evidence had to establish that OOSI had actual knowledge of Lovelace's presence in the parking lot in time to have prevented the shooting by notifying law enforcement authorities. In *Nappier*, the court stated:

> Consistent with this duty of the business owner to exercise reasonable care to maintain safe premises, an affirmative duty to exercise reasonable care to protect a business customer from criminal attack has been recognized under special circumstances. The special circumstances exist where the business owner *realizes, or should realize*, through special facts within his knowledge, that criminal acts of a third party are occurring or are about to occur on his premises. In these circumstances the business owner is charged with a duty to take precautions to protect his customers from such criminal actions.

*Id*. at 860 (emphasis added). The *Nappier* court, however, further noted:

> Liability attaches only where the occupant is negligent, i.e. fails either to take reasonable care to discover that dangerous conduct of third persons is occurring or is likely to occur, or to take reasonable care to provide appropriate precautions. It is not necessary that the business owner be aware of the exact type of criminal act or acts which might take place on its premises. It is sufficient if the business owner has notice, actual or constructive, of prior acts committed by third persons on or about their premises which might cause injuries to its patrons.

---

[2]Because OOSI does not challenge the sufficiency of the evidence to establish that its knowledge prior to Lovelace's arrival rendered his presence reasonably discoverable, we do not decide the question.

10

However, to bring itself within this rule of law, a plaintiff must allege that specific crimes occurred on the premises; when the identity is known, that specific individuals committed violent acts on the premises; that the individual attacker had been on the premises previously and had acted violently, *or that the [defendant] was aware or could have been aware of his presence and potential danger in sufficient time to avert the attack or summon police assistance.*[3]

*Id*. at 862 (emphasis added). The evidence in this case supports a finding that OOSI could have been aware of Lovelace's presence and potential danger in sufficient time to prevent injury to Wieland to summon police assistance. Indeed, the evidence established that OOSI was located diagonally across the street from the local police station. There was testimony that the police could have responded to OOSI within an hour if the threat was known an hour before the shooting. It is reasonable to infer that a police response to the parking lot sometime in the hour before the shooting would have resulted in police contacting Lovelace and preventing him from injuring Wieland.

Given the evidence of the "special facts and circumstances" in this case, substantial evidence supported the giving of Instruction Number 6 in this case. Specifically, the evidence supported findings that OOSI knew, *or by using ordinary care could have known* that Lovelace (1) was in the parking lot and (2) posed a danger to Wieland; and that (3) sufficient time existed after OOSI knew *or by using ordinary care could have known* that Lovelace was in the parking lot and posed a danger to Wieland to prevent injury to her.

In its second point on appeal, OOSI argues that the circuit court erred in overruling its objections to Wieland's closing argument because her argument misstated the law instructed upon in Instruction Number 6 as to OOSI's duty of care to protect her in the parking lot. During

---

[3]We are aware that *Nappier* is a prior similar incident case, but, as made clear in *L.A.C.*, Missouri is not rigid in its characterization of exemptions to the no duty rule but treats these types of cases as it would any other negligence case.

11

closing argument, Wieland's counsel argued to the jury several times that OOSI was negligent in failing to follow its protocol or procedures for handling an employee's concerns regarding domestic issues. In particular, counsel argued that, had OOSI followed its own protocol, it could have known that Lovelace was in the parking lot and notified the police.

OOSI asserts that it was error for Wieland to argue that OOSI was negligent because of its failure to follow its protocol. In support of its contention, OOSI relies upon the same argument it advanced in its first point on appeal, that is that Instruction Number 6 "only instructed upon a lone duty of care under the specific harm exception that imposed a duty to protect Wieland *after* Lovelace had entered the parking lot, and did not instruct upon a duty to protect her *before* he entered the parking lot by following its protocol[.]"

Generally, we review the trial court's ruling in closing argument for an abuse of discretion. *Nelson v. Waxman*, 9 S.W.3d 601, 606 (Mo. banc 2000). "If a complained of argument during closing is within the purview of a matter to be determined by the jury as it has been instructed, the argument is not a misstatement of the law." *Peterson v. Progressive Contractors, Inc.*, 399 S.W.3d 850, 857 (Mo. App. 2013). Indeed, "the permissible field of argument is broad, and so long as counsel does not go beyond the evidence and the issues drawn by the instructions, or urge prejudicial matters or a claim or defense which the evidence and issues drawn by the instructions do not justify, he is permitted wide latitude in his comments." *Heshion Motors, Inc. v. W. Int'l Hotels*, 600 S.W.2d 526, 534 (Mo. App. 1980).

OOSI's contention that Wieland's closing argument misstated the law in regard to OOSI's duty as instructed upon in Instruction Number 6 fails for many of the same reasons discussed in regard to OOSI's first point on appeal. We again note that OOSI does not challenge the wording of Instruction Number 6, including the language of paragraph second and fifth, which reference

12

the time when, "by using ordinary care[,] [OOSI] could have known" of Lovelace's presence in the parking lot. In regard to the closing argument, OOSI is still insisting that it owed no duty to protect Wieland until after Lovelace entered the parking lot, and, therefore, the circuit court erred in allowing Wieland to argue the OOSI could have known of Lovelace's presence sooner— before Lovelace had even entered the parking lot—if it had taken precautionary action to protect Wieland by following the company's protocol. Instruction Number 6 required the jury to determine when, in the exercise or ordinary care," OOSI "could have known" of Lovelace's presence. As we noted in point one, the facts and circumstances known to OOSI before Lovelace's arrival inform the determination as to what level of vigilance a reasonable person would have exercised. Evidence of OOSI's failure to follow company protocols was relevant in assessing whether OOSI knew, *or by using ordinary care could have known* that Lovelace was in the parking lot and posed a danger to Wieland and whether sufficient time existed after OOSI knew *or by using ordinary care could have known* that Lovelace was in the parking lot and posed a danger to Wieland to prevent injury to her. Wieland's closing argument, therefore, did not go beyond the law as submitted in Instruction Number 6.

In its final point on appeal, OOSI contends that the circuit court erred in overruling its objections to Wieland's closing argument that OOSI was negligent for breaching a duty to protect Wieland in the parking lot by failing to follow its protocol. OOSI asserts that this argument misstated the law instructed upon in Instruction Number 6 because the instruction specified only one action or omission of OOSI that the jury could consider in determining whether OOSI was negligent in breaching a duty to protect Wieland in the parking lot, i.e. whether OOSI was negligent in failing to notify law enforcement authorities. OOSI argues that

13

the instruction did not instruct the jury that it could find that OOSI was negligent in failing to follow its protocol.

During closing argument, counsel for Wieland argued that OOSI "breached" its "protocol" or "procedure." Further, counsel argued that OOSI's "negligence [of] not allowing [Wieland] to park up front [and of] not notifying authorities[--]combined with the shooter's actions[--]caused Ms. Wieland harm[.]" Counsel also told the jury that "[o]nce nine members of the jury agree that there is a breach of this protocol, they could have called authorities, they didn't do it, then we move on to damages."

OOSI's contention that Wieland's closing argument misstated the law in regard to what the jury was permitted to consider in determining whether OOSI breached its duty to protect her in the parking lot fails for the same reasons as we discussed in regard to OOSI's first and second point on appeal. Evidence of OOSI's failure to follow company protocols was relevant in assessing whether OOSI knew, *or by using ordinary care could have known* that Lovelace was in the parking lot and posed a danger to Wieland and whether sufficient time existed after OOSI knew *or by using ordinary care could have known* that Lovelace was in the parking lot and posed a danger to Wieland to prevent injury to her. Indeed, OOSI's failure to follow company protocol was relevant to determining whether it could have known of the presence of danger in the parking lot and could have discovered Lovelace in sufficient time to call law enforcement.

We affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

14