Donald Lee CAREY, a Minor, and Larry Dean Carey, a Minor, by Lillian M. Carey, their Mother and Natural Guardian, Appellants,

v.

CRAWFORD ELECTRIC COOPERATIVE, INC., a Corporation, Respondent.

No. 47858.

Supreme Court of Missouri,

Division No. 1.

June 12, 1961.

Lusser, Morris & Burns and Rene J. Lusser, Robert H. Burns, St. Louis, for appellants.

Carter, Fitzsimmons & Brinker, Paul E. Fitzsimmons, Clayton, for respondent.

COIL, Commissioner.

Leo Carey was electrocuted on May 14, 1957 while assisting in the installation of a television antenna system at the farm home

of William Voss. Leo's minor sons, through their mother as their natural guardian, sought $25,000 from Crawford Electric Cooperative, Inc., as damages for their father's alleged wrongful death. A jury returned a verdict for Crawford Electric, hereinafter called defendant, and the Carey brothers, hereinafter referred to as plaintiffs, have appealed from the ensuing judgment. They claim that the trial court erred in giving, at defendant's request, instructions 11 and 12. Defendant asserts that the instructions were not erroneous and that, in any event, plaintiffs' decedent was contributorily negligent as a matter of law. Inasmuch as we are of the view that the trial court did not err in giving instructions 11 and 12 for any of the reasons urged by plaintiffs, we do not reach defendant's contention as to contributory negligence.

The Voss farmhouse was located on the north side of county Highway C. On the south side of the highway was a 35-foot pole carrying defendant's electric transmission lines. From a transformer on that pole, a 7200-volt, single-phase, 2-wire power line ran 155 feet northwardly across the highway and to another transformer on a pole on the Voss farm. That transformer reduced the voltage so that the current could be used for various farm purposes. The upper or hot wire of the power line running between the two transformers was uninsulated and 26 feet above the ground; the lower or neutral wire was 22 feet above the ground and directly below the upper wire. The Voss house faced south. The west side of its rear one-story portion extended 8½ feet farther west than the west side of the front two-story part. The wires of the power line, running as they did along the west side of the Voss house, were about 14 feet west of the west side of the front portion and about 5½ feet west of the west side of the rear portion. The diagonal distance from the house's northwest corner at the eave to the hot wire was about 14½ feet.

Leo Carey and Herman Hoerath were employed by John Figone to install television antenna systems. Leo, who had worked for five or six years, and Herman, who had worked for five or six months, went to the Voss home in the early afternoon of a sunny November day to install an antenna system on the roof of the rear one-story portion of the house. The system consisted of a mast 28½ feet in length, the antenna to be fastened to the mast, a mount on which the mast was to rest, and hooks to be installed on the roof to which guy wires were to be attached. On the occasion in question the antenna was fastened to the mast and the mount and hooks were placed on the roof. Thereafter, the mast was placed on the ground so that its base was about five or six feet west of the west side of the one-story rear portion of the house, at a place approximately in the center, north to south, of such rear portion, so that the base was directly below the wires of the power line. Leo Carey, facing west, placed his feet against the base of the mast to steady it and to prevent it from sliding eastwardly and perhaps at some time placed his hand or hands on the mast. Herman Hoerath grasped the mast at a point midway of its length, lifted it, and began walking toward Carey in order to raise the mast to a vertical position. When the mast was almost vertical, a part of the antenna came in contact with the hot wire. Hoerath received a shock but was relatively uninjured, while, as aforenoted, Carey was electrocuted.

Instruction 11 was:

"The Court instructs you that Leo Carey was required to exercise that degree of care that an ordinary prudent person, under the same or similar circumstances, would exercise for his own safety. If Leo Carey failed to exercise such care and if such failure on his part, if any, directly contributed to bring about his injuries and death, then the plaintiffs, his children, are not entitled to recover in this case.

"In this connection, the Court instructs you that if you find and believe from the evidence that defendant maintained for the

purpose of distributing electric current to William Voss, one of its customers, a pole and two wires on the west side of the Voss premises in Crawford County, Missouri, the higher wire being twenty-six (26) feet above the ground and cleared the West side of the Voss Home by Fourteen Feet and six inches (14 ft. & 6 in.) carried a high voltage of electricity, and the lower wire or neutral wire and twenty-two (22) feet above the ground and directly beneath the high voltage wire, if you so find, *and if you further find that at the time and place referred to in evidence, Leo Carey, while standing in close proximity to the West side of the Voss home, commenced with Herman Hoerath, to raise from the ground to a vertical position, a metallic television mast and aerial, twenty-eight feet and six inches (28 ft. & 6 in.) in length* and that said Leo Carey should have seen the wire carrying electric current above his head, and in the exercise of ordinary care he should have known that he would expose himself to danger of injury if the television mast and aerial should come in contact with the aforesaid wire which carried a high voltage current of electricity, *and if you find that Leo Carey while still in a position of safety on the West side of the Voss home, continued to raise the television mast and aerial upwards and in an Easterly direction toward the Voss home, and that said deceased could have prevented the television aerial from coming into contact with the aforesaid wire and thus have remained in a position of safety, but that he continued raising with Herman Hoerath, said television mast and aerial and brought the television aerial in contact with the higher wire carrying an electric current* and thereby suffered the injury which resulted in his death, and if you further find that Leo Carey in so conducting himself on the occasion referred to in the evidence was negligent and that such negligence directly contributed to bring about his injuries and death, then you are instructed that plaintiffs are not entitled to recover and your verdict will be in favor of the defendant." (Our italics.)

■ Plaintiffs contend the instruction is erroneous for the asserted reason that it permitted the jury to make essential findings of fact which were unsupported by the evidence. One such specified finding was that the hot wire "cleared the West side of the Voss Home by Fourteen Feet and six inches." Plaintiffs argue that there was no evidence that the wire was farther than six or seven feet west of the west wall of the Voss home. Defendant's evidence showed that the wires in question cleared the west side of the front portion of the Voss home by something more than 14 feet and cleared the rear one-story portion by 5 or 5½ feet. As we have heretofore indicated, there was evidence that the distance diagonally from the house's northwest corner at the eave to the hot wire was a distance of 14½ feet. Plaintiffs contend that the hypothesis in the instruction permitting a finding that the wires cleared the west side of the Voss home by 14½ feet when in fact the horizontal clearance was only 5 to 7 feet was prejudicial in an instruction submitting Carey's contributory negligence, in that the jury might well have found that Carey should have seen the wires as he stood bracing the bottom of the mast if the wires had been some 7 to 10 feet west of him, while a jury might well have found that, in the exercise of ordinary care, he should not have seen the wires if they were directly above him.

It would have been desirable for the instruction to have been more specific as to the clearance to which the 14½-foot measurement referred, but it seems to us that the jury reasonably could not have misunderstood the instruction's reference. The evidence as to the distances by which the wires cleared the various portions of the Voss house was plain and essentially undisputed. The testimony of plaintiffs' witness Koopman as to the 14½-foot clearance measured diagonally from the northwest eave to the hot wire was made especially clear by extensive cross-examination of a type which made it not only clear but which must have especially impressed.

each juror with the fact that the 14½-foot clearance distance was not the distance measured horizontally from the west side of the rear portion of the house but was the diagonal distance from the northwest eave to the hot wire. Under the circumstances we are convinced that the jury was not misled and that the plaintiffs were not prejudiced by the language in question.

■ Plaintiffs also contend that there was no evidence to support the instruction's hypothesis that Leo Carey "commenced with Herman Hoerath, to raise from the ground to a vertical position" or continued to raise, the mast and antenna. Plaintiffs argue in support that Carey's actions in placing his feet against the bottom of the mast to steady it and to keep it from sliding eastwardly, and perhaps at some time placing his hand or hands against the mast, did not constitute evidence that Carey commenced to raise the mast or continued to raise it until it came in contact with the hot wire. The language of the instruction in that respect has been italicized in the instruction set forth above.

If we understand plaintiffs' exact contention, it is that Carey's negligence, if any, was, plaintiffs say, "passive," but that under the terms of the instruction Hoerath's "active" negligence was in fact imputed to Carey, even though instruction 8 specifically directed that no negligence of Hoerath could be imputed to or charged against Carey. That contention, however, as we understand, is based solely on the proposition that there was no evidence that Carey commenced to raise or raised the mast but, on the contrary, the evidence showed that Hoerath alone raised the mast. We are of the opinion that the instruction made it reasonably clear that Carey's hypothesized acts were those which he performed in assisting Hoerath in their joint attempt to place the mast in a vertical position. While the instruction might well have detailed Carey's acts of assistance, we think there was no probability that the jury misunderstood just what assistance Carey rendered,

or, in view of instruction 8's positive direction to the contrary, that the jury would have believed that the negligence of Hoerath was to be imputed to or charged against Carey.

■ Plaintiffs contend further that instruction 11 was erroneous for the asserted reason that it assumed or permitted the jury to find that Carey had knowledge of the fact that the hot wire in question carried high voltage when the evidence failed to so show but, on the contrary, tended to prove that no witness in the case, including Carey's employer, his helper, and Mr. Voss, the homeowner, had knowledge that the hot wire carried 7,200 volts at the place in question until after the casualty. Plaintiffs point to this language of instruction 11 to sustain their contention that the instruction assumed Carey's knowledge of high voltage: "and that said Leo Carey should have seen the wire carrying electric current above his head, and in the exercise of ordinary care he should have known that he would expose himself to danger of injury if the television mast and aerial should come in contact with the aforesaid wire *which carried a high voltage current of electricity.*" (Our italics.) Plaintiffs argue that the jury could have found that Mr. Carey should have been and undoubtedly would have been more cautious had he known that the wire carried 7200 volts of electricity. We assume plaintiffs mean "more cautious" than he should or would have been had he known or believed that the wire carried any less than 7,200 or "high" voltage, or "more cautious" than he should or would have been if he, like the witnesses, did not know what voltage the wire carried.

It seems to us that the essential question as to Carey's contributory negligence was not whether he knew or should have known that the particular wire carried 7,200 volts or high voltage but was rather whether he knew, or in the exercise of ordinary care should have known, that the wire was an uninsulated wire carrying electric cur-

rent, irrespective of the voltage. There was circumstantial evidence sufficient to support a finding that plaintiffs' decedent, in the exercise of ordinary care, should have seen the wires in question and should have known that at least one of them was an uninsulated wire carrying electric current. Indeed, there was no contention below, nor is there here, to the contrary. The jury was informed repeatedly, by the evidence and by both defendant's and plaintiffs' instructions, that the hot wire in question did in fact carry 7,200 volts. Under the related circumstances it is reasonable to believe that the jury would have understood that the instruction's words "which carried a high voltage current of electricity" constituted a statement of a conceded, well-publicized and oft-repeated fact and were not intended to and did not assume or require the jury to find that Mr. Carey knew or should have known that the wire carried a current of high voltage or of any particular voltage.

Instruction 12 was: "The Court instructs the jury that if you find and believe from the evidence that on the 14th day of November, 1957, the defendant, Crawford Electric Cooperative, Inc., was engaged in the business of supplying electricity to its customers in Crawford County, Missouri, and that in so doing, it maintained for the purpose of distributing electric current to William Voss of Crawford County, Missouri, a pole and two wires on the West side of the Voss premises, the higher of which wires was Twenty-six (26) feet above the ground and carried high voltage electric current, the lower of the two wires or neutral wire was Twenty-two (22) feet above the ground beneath the higher electric wire, if you so find, *and if you further find and believe that said wires, including the higher wire carrying a positive electrical current, at the time and place referred to in evidence, were constructed at a height and in a manner that the defendant, in the exercise of the highest degree of care, could not reasonably have anticipated that adults, such as Leo Carey, would come into* *contact with the wire carrying a high voltage electrical current, if you so find, then your verdict must be for the defendant, Crawford Electric Cooperative, Inc."* (Our italics.)

■ Plaintiffs contend first that part of the italicized portion of the foregoing instruction "gave the jury an unbridled roving commission" in that the phrase "in a manner" permitted the jury to "speculate and create its own standards." We do not agree. It is true as the cases cited by plaintiffs indicate, that an instruction should hypothesize the facts essential for a jury to find prerequisite to a plaintiff's recovery. And it is also true that under certain circumstances, for example, in cases in which there is a dispute in the evidence as to the manner in which an accident occurred, it is or may be erroneous to predicate a plaintiff's recovery upon the hypothesis that if the jury finds that certain acts were done "in the manner and at the time and place shown to you in the evidence." See, for example, Thaller v. Skinner & Kennedy Co., Mo.App., 339 S.W.2d 487, the case relied upon by plaintiffs. But the principle stated in that and similar cases has no application here for the reason that there was no dispute in this case as to the height of the wires or the "manner" in which they were constructed. As a matter of fact, the instruction, prior to the use of the words "in a manner," hypothesized the undisputed facts as to the "manner" in which the wires in question were constructed.

■ Plaintiffs also contend that instruction 12 was erroneous because, they say, part of the above-italicized language directed the jury to measure defendant's conduct by an "improper standard of care," i. e., the care that this defendant would use in the exercise of the highest degree of care rather than the care a person similarly situated would use.

Instruction 1, among other things, defined the highest degree of care as "that degree of care which a very careful and prudent

person would ordinarily exercise under the same or similar circumstances." Considered in conjunction with instruction 1, we think instruction 12 hypothesized the proper standard of care by requiring a finding that the "defendant, in the exercise of the highest degree of care, could not reasonably have anticipated," etc. That hypothesis seems to us to be tantamount to a requirement that defendant, in the exercise of that degree of care which a very careful and prudent person would ordinarily have exercised under the same or similar circumstances, could not reasonably have anticipated, etc. We need not, however, go further in this case than to point out that a sufficient answer to plaintiffs' present contention is that plaintiffs in their own instructions voluntarily submitted the standard of care applicable to this defendant in the same language as that used in defendant's instruction 12. For example, plaintiffs' instruction 3 provided in part, "and if you further find and believe from the evidence that the defendant, in the exercise of the highest degree of care, could have reduced the voltage of said electrical line," etc. Plaintiffs may not complain of the language of defendant's instruction which was the same as their own language where, as here, plaintiffs voluntarily adopted that language in their instructions. Jewell v. Arnett, Mo., 318 S.W.2d 277, 279 [2]; cf. Myers v. Buchanan, Mo., 333 S.W.2d 18, 23–25.

Plaintiffs contend further that instruction 12 is erroneous because a part of the italicized portion above permitted the jury to find that plaintiffs' decedent had knowledge or assumed that he had or imputed to him knowledge that the hot wire carried "high voltage electrical current." That is the same proposition urged as to instruction 11, and the reasons given for our disposition of that contention as to instruction 11 are equally dispositive of it as to instruction 12.

■ Plaintiffs contend finally that verdict-directing instruction 12 is erroneous because it ignores the disjunctive submissions of negligence submitted in plaintiffs' verdict-directing instructions 2, 3, and 4. Plaintiffs' three instructions hypothesized respectively, defendant's failure to warn of high voltage, unnecessarily maintaining the high voltage wire at the place in question, and maintaining the wire in question in an uninsulated condition. As we understand it, plaintiffs contend that instruction 12 is a converse verdict-directing instruction and, as such, must have negatived specifically each disjunctively submitted charge of negligence contained in plaintiffs' three verdict-directing instructions.

Without determining the validity of the exact contention as a general proposition or under other facts and circumstances, it is clear that it has no application where, as here, plaintiffs' recovery under each of their hypothesized theories of negligence involved, and in fact submitted, the issue of whether defendant should reasonably have anticipated some injury to persons such as plaintiffs' decedent by reason of the location of its uninsulated wire. Consequently, instruction 12's requirement for a finding that defendant reasonably could not have anticipated injury to Leo Carey by reason of the presence of the uninsulated wire, effectively negatived an essential prerequisite to plaintiffs' recovery on each of the submitted theories. To demonstrate the validity of that conclusion, we point out that plaintiffs' instruction 2 required a finding "that the defendant knew, or by the exercise of the highest degree of care, could or should have known that persons lawfully upon the premises of the Voss home and in the discharge of occupational duties, including the said Leo A. Carey, * * * might reasonably come into contact with the defendant's aforesaid 7200 volt electrical line * * *"; instruction 3 required this finding: "that the defendant knew, or in the exercise of the highest degree of care could or should have known that in maintaining said electrical line charged with 7,200 volts of electricity, * * premises at and about the Voss home would be rendered dangerous and not reasonably safe for persons in and about said premises

in the discharge of occupational duties and particularly the father of the plaintiffs, the said Leo A. Carey * * *"; instruction 4 required the jury to find: "that the defendant knew, or by the exercise of the highest degree of care could or should have known that in maintaining said wires in a bare and uninsulated condition, the premises at and about the Voss home would be rendered dangerous and not reasonably safe for persons in and about said premises in the discharge of occupational duties and particularly the father of the plaintiffs, the said Leo A. Carey, * * *."

It thus appears that by requiring actual or constructive knowledge on the part of defendant that Mr. Carey might reasonably come in contact with the wire (instruction 2) or that the 7,200-volt wire made the premises not reasonably safe for Mr. Carey to discharge his duties there (instruction 3) or that the uninsulated wire rendered the premises not reasonably safe for Mr. Carey to discharge his duties thereon (instruction 4), plaintiffs in reality required the jury to find in each of their three instructions that defendant reasonably could have anticipated danger to those lawfully working in and about the Voss premises due to the location of its uninsulated wire. It follows that if the jury found, as was required by instruction 12, that defendant could not reasonably have anticipated that Mr. Carey would come into contact with the hot wire in question, the jury in effect found that the defendant reasonably could not have anticipated injury to those who lawfully might be performing work upon the Voss premises by reason of the location of its uninsulated wire. See Lebow v. Missouri Public Service Co., Mo., 270 S.W.2d 713 [2].

We do not mean by our holding herein to indicate either that we have decided that plaintiffs were entitled to recover on each of the three theories submitted or that we have approved the form of instruction 12 including its apparently unnecessary reference to adults. Cf. Gladden v. Missouri Public Service Co., Mo., 277 S.W.2d 510, 519 [10–13].

It is our conclusion that the trial court did not err in giving instructions 11 and 12 for any of the reasons urged by plaintiffs.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.