Thomas WELLS, Plaintiff-Respondent,

v.

Elizabeth WACHTELBORN, Defendant-Appellant.

No. 32307.

St. Louis Court of Appeals.

Missouri.

Nov. 15, 1966.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 12, 1966.

Application to Transfer Denied Feb. 13, 1967.

John P. Montrey, Guilfoil, Caruthers, Symington, Montrey & Petzall, St. Louis, for appellant.

William R. Murphy, McLeod & Murphy, St. Louis, for respondent.

WOLFE, Presiding Judge.

This is an action in which the plaintiff seeks to recover damages arising out of personal injuries and property damages which he sustained when an automobile which he was driving was struck by an automobile driven by the defendant. There was a verdict and judgment for the plaintiff in the sum of $7,700. The defendant moved for a judgment in accordance with her motion for a directed verdict at the close of the evidence, or in the alternative, for a new trial. The defendant's motion for a judgment was overruled and the motion for a new trial was overruled upon the condition that the plaintiff remit $2,500 from the verdict and judgment. The plaintiff made the remittitur and a new judgment for $5,200 was entered from which the defendant prosecutes this appeal.

Plaintiff brought his action on various charges of negligence. Included among them was a charge of humanitarian negligence. He submitted his case to the jury, however, only on one charge of primary negligence and that was that the defendant negligently drove her car into an intersection at an excessive speed. The defendant charged the plaintiff with contributory negligence.

One of the points raised is that the plaintiff was contributorially negligent as a matter of law. The plaintiff's case as it related to the collision of the two automobiles rests upon testimony of two witnesses. Wells, the plaintiff, testified and the other witness was a bystander named Spain. The testimony of Wells was that on the night of October 18, 1962, he had spent the evening at his brother's house. At some time after 11:00 P.M. Wells was returning to his home in his 1949 Ford. His homeward course was westwardly over Fyler Avenue in the City of St. Louis. Fyler Avenue which extends in an east and west direction, intersects Hampton Avenue which runs north and south. Fyler has four lanes for traffic and Hampton has five lanes at the intersection. The intersection is controlled by traffic lights but at the time of night that the parties reached the intersection the lights were set so that east and west bound traffic on Fyler was controlled by a flashing red light, and north and south bound traffic on Hampton Avenue was controlled by a flashing amber light.

Wells drove his car up to the intersection and stopped. To his right, in the curb lane, another car stopped. The car to his right turned northwardly into Hampton Avenue. While Wells was still stopped he looked to his right and saw the lights of defendant's southbound car coming around a curve in Hampton Avenue toward the intersection. He also saw from his left a northbound car approaching. He waited for the northbound car to clear the intersection and then started to cross. When his car was barely entering the intersection he again saw the lights of defendant's car approach-ing and at that time it was approximately 200 to 250 feet away. He did not form any estimate of its speed at that time but he proceeded across the intersection.

When his car was at a point where the back end of it was in the left turn lane for cars southbound on Hampton and the front end of his car was in the center southbound lane he saw the lights of defendant's car. She was then between 25 and 50 feet away and his car was right in front of her. He had been shifting into second gear just as he saw the lights so he pressed the throttle to the floor board and the front end of his car was two or three feet beyond the west curb of Hampton Avenue when it was hit by defendant's car.

Wells estimated the speed of defendant's car at the time he saw her lights just before the collision, at 40 to 45 miles per hour. He later on cross examination stated that defendant's car was going "a good 30" miles per hour. He said that his own car was moving at 10 miles per hour at the time it was struck. After the collision his car traveled about 40 feet west of the intersection and turned over.

Howard Spain, the plaintiff's other witness, was employed as a service station attendant. The station was located on the northwest corner of the intersection and Spain testified that he saw the collision. He said that it was closing time for the service station and he came out and looked north and saw defendant's car. When the car was about 600 feet from the intersection he estimated its speed to be 40 to 45 miles per hour. He also stated that defendant's car was about 150 feet from the intersection as plaintiff started across and that plaintiff drove his car in front of defendant's car. Both witnesses stated that there was nothing to block the plaintiff's view of the intersection and the converging streets.

The defendant testified that she traveled southwardly on Hampton toward the intersection. She was going at the speed of 25 to 30 miles per hour. Her car was in the center lane. She said that as she entered

the intersection she had reduced her speed to 15 to 20 miles per hour. As she approached Fyler Avenue she saw two westbound cars approaching Hampton from the east on Fyler Avenue. A northbound car swerved to its left and she veered to the curb lane to avoid it but it straightened out and continued northwardly. She then entered the intersection just as the plaintiff's car came through and she put on her brakes and swerved westwardly to avoid a collision, but the left front of her car struck the center of plaintiff's car and it traveled on into Fyler Avenue. Her car stopped almost instantly.

As stated, this case was submitted on primary negligence and defendant pleaded contributory negligence on the part of the plaintiff. It is the defendant's contention that the plaintiff was contributorially negligent as a matter of law.

When one seeks recovery on the charge of primary negligence the duty to exercise due care rests upon both parties. A party may not himself disregard and fail to exercise the prudence required of him and expect the other party to protect him from his own negligence. Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575; James v. Berry, Mo.App., 301 S.W.2d 530. It is, of course, established law that if one's own negligence contributes to the proximate cause of the injury for which relief is sought and this contributory negligence is pleaded as a defense one cannot recover on primary negligence of the defendant. It is also the law that a failure on the part of the plaintiff, where duty to look exists, to see what is plainly visible when he looks, constitutes contributory negligence as a matter of law. Branscum v. Glaser, Mo., 234 S.W.2d 626, and cases therein cited.

Here the plaintiff, by his own testimony, knew that the defendant's car was approaching but from the moment he started entering the intersection from a stopped position in low gear he did not once look to estimate the speed of the approaching car or its distance from the intersection. Instead he drove his car on a collision course when a glance to his right would have alerted him to the hazards of the situation in time to have avoided it. Hampton is a wide street, the plaintiff's view was unobstructed, he knew a car was approaching and he had a continuing duty to observe it. Instead he drove thirty-five feet into the intersection without so doing. His conduct was one of complete indifference to apparent danger and constituted negligence as a matter of law. Branscum v. Glaser, supra; Wilson v. Toliver, supra; Payne v. Smith, Mo., 322 S.W.2d 764; Thomas v. Aines Farm Dairy, Mo.App., 257 S.W.2d 228; Folluo v. Gray, Mo.App., 256 S.W.2d 273.

Since the court should have directed a verdict for the defendant because plaintiff was negligent as a matter of law we need not pass upon the other points here raised and the judgment is reversed.

ANDERSON and RUDDY, JJ., concur.