David M. DORRIN, a minor by Harry Dorrin, his next friend, Plaintiff-Respondent,

v.

UNION ELECTRIC COMPANY, a corporation, Defendant-Appellant.

No. 39454.

Missouri Court of Appeals, Eastern District, Division One.

April 3, 1979.

James J. Virtel, Jerry B. Wamser, Schlafly, Griesedieck, Ferrell & Toft, St. Louis, for defendant-appellant.

Charles E. Gray, Thomas C. DeVoto, Gray & Ritter, St. Louis, for plaintiff-respondent.

SNYDER, Presiding Judge.

Plaintiff David Dorrin, an eighteen year old college freshman, while in a tall tree located between Queeny Park and Mason Road in St. Louis County, came into contact with an uninsulated 7200 volt electric line maintained by defendant Union Electric. Dorrin suffered severe electrical burns on his back, right shoulder, left leg and left thumb, but survived the shock and ensuing fall.

Plaintiff tried the case on the theory that Union Electric was negligent in maintaining an uninsulated wire within the probable reach of persons who might climb the tree. Union Electric relied on the affirmative defense of contributory negligence. Ten members of the jury returned a verdict for Union Electric. Upon plaintiff's motion, a new trial was granted on the ground that prejudicial error was committed in giving defendant's verdict-directing Instruction No. 3, which submitted the defense of contributory negligence. Union Electric appeals. In this opinion the parties will be referred to by their trial court designations or by name.

Reversed and remanded, with instructions to reinstate the verdict for the defendant, Union Electric, and enter final judgment thereon.

Dorrin and his two companions, Bill Rea and Steven Clerk, left Rea's house late in the afternoon of September 26, 1974, to go to Clerk's house to play pool. On their way over Mason Road they passed Queeny Park. Because Queeny Park had just been opened to the public that day, they decided to stop and look around the park. After parking their automobile, the three got out of the car, crossed Mason Road from east to west, walked under Union Electric's wires and entered Queeny Park.

After walking in the park for fifteen or twenty minutes, and enjoying the clear, warm fall afternoon, they decided to return to their car. As they approached Mason Road from the west, they discovered a tall tree with a set of wooden steps nailed to its trunk. The tree was about sixty feet high and had several large branches extending upward from the trunk and toward Mason Road. The boys decided to climb the tree to get a better view of the park and the surrounding area. Dorrin was the first one into the tree and climbed higher than his two companions. Although it was late in September, the tree was still in leaf. From this point on, the versions of the accident given by Dorrin and the witnesses differ.

Dorrin testified he climbed until he was standing on the sixth of the eight wooden steps. Two Union Electric 7200 volt primary wires and one common neutral or ground wire passed the tree on the east side. They were supported by poles at a height of approximately thirty-five feet for the primary wires and twenty-nine feet for the neutral. Dorrin's head was one or two feet above the primary wire closest to the tree. According to Dorrin, he was straddling the main limb, pressing his chest against it, while holding onto the upper wooden steps. The limb was twelve inches in diameter and did not bend or sway under his weight. When Dorrin was in this position he faced east, toward the electric wires, and looked out over Mason Road. The trunk of the tree was between him and the wires. To view the park he would have had to turn around or look back over his shoulder. Twenty-two inches separated the tree and the closest uninsulated primary wire.

Dorrin and Bill Rea believed they were in the tree for fifteen to thirty minutes and never climbed above the primary wire. Dorrin, Rea and Clerk denied seeing the Union Electric wires and poles at any time during the afternoon.

Dorrin's version of the accident was that after about fifteen minutes of standing on the wooden step, he turned his body to the right, keeping the limb in front of him. Suddenly, he was "grabbed by some force";

he saw a flash of light and then fell to the ground. Dorrin believed he came into contact with the wire and then fell; he specifically denied falling into the wire. Neither Clerk nor Rea could say how Dorrin came into contact with the wire.

Plaintiff's witness McDowell, who lived on Mason Road, close to the scene of the accident, testified the boys were in the tree when he came home from work at about 4:10 p. m. If the accident happened at or after 5:45 p. m. (as the evidence indicated), the boys would have been in the tree an hour and one-half, or more. McDowell also believed their position in the tree was well above the primary wire.

Defendant's witness Hagar arrived at his home on Mason Road about 4:30 p. m. and saw three young men in the tree at a point six to eight feet above the wires. According to Hagar, the three stayed in this position for some time, were loud and rowdy, and shouted obscenities at a young girl passing by the tree. Hagar placed the time of the accident between 6:00 and 6:15 p. m. He heard a limb crack and then a loud explosion; he looked out his dining room window and saw Dorrin hit the ground.

Based upon the nature of the burns suffered, Dorrin's medical witness believed the electric current entered the left side of the small of Dorrin's back and exited through his left thumb and right shoulder. Plaintiff's expert witness, Joseph Movshin, an engineer, held the opinion that Dorrin was climbing or circling around the tree limb and touched his back to the uninsulated wire. He did not believe the electric current in the wire could jump or arc 34 inches under the conditions then present.

Union Electric's verdict-directing Instruction No. 3 read as follows:

Your verdict must be for the defendant whether or not defendant was negligent if you believe;

First, Plaintiff knew or by the use of ordinary care could have known of the presence of an electric wire near the tree and knew or by the use of ordinary care could have known there was a reasonable likelihood of injury to himself if his body contacted said wire; and

Second, while plaintiff was in the tree he either: failed to keep a careful lookout for the electric wire, or caused his body to contact the electric wire; and

Third, Plaintiff's conduct in any one or more of the respects submitted in paragraph Second, was negligent; and

Fourth, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

The term "negligence" as used in this instruction with respect to plaintiff David Dorrin means the failure to use that degree of care which an ordinarily prudent boy of the same age, capacity and experience would use under the same or similar circumstances.

MAI 32.01 modified

.  .  .  .  .

MAI 11.04.

In his motion for new trial, plaintiff contended the instruction contained eleven "prejudicial errors." Eight of these were sustained by the trial court. In substance, the eight alleged defects or errors were:

(1) The instruction overemphasized the duty of lookout by submitting the duty in both Paragraphs First and Second;

(2) Paragraph First violated Rule 70.-02(a) because it submitted detailed evidentiary facts and was not simple, brief and impartial;

(3) Paragraph First submitted "could have known" instead of "should have known" in connection with plaintiff's duty;

(4) The instruction, by submitting plaintiff "caused his body to contact the electric wire," allowed the jury to consider conduct of the plaintiff which was not the proximate cause of his injury;

(5) The language "caused his body to contact the wire" amounted to a roving commission and allowed the jury to find in favor of defendant if "any" of plaintiff's damages were the result of any conduct of plaintiff which caused his body to touch the wire;

(6) The instruction did not require the jury to find the electrical burns were proximately caused by plaintiff's negligence in causing his body to contact the wire;

(7) The instruction gave the jury a roving commission to speculate on what conduct of plaintiff constituted negligence; and

(8) Under the evidence plaintiff was not under a duty of lookout.

■ Generally, in reviewing the action of the trial court in ruling on a motion for new trial, an appellate court is more liberal in upholding the action when the motion is granted than when it is denied, because reversing the trial court's action in denying a new trial would require a reversal of a judgment. *Pollard v. General Elevator Engineering Company,* 416 S.W.2d 90, 96 (Mo. 1967); *Royal Indemnity Company v. Schneider,* 485 S.W.2d 452 (Mo.App.1972).

However, this rule of liberality must be interpreted and applied in the light of cases holding that " '[t]he trial court's power "to grant a new trial is discretionary only as to questions of fact and matters affecting determination of issues of fact. There is no discretion in the law of a case, nor can there be an exercise of sound discretion as to the law of a case." ' " *Wims v. Bi-State Development Agency,* 484 S.W.2d 323, 326 (Mo. banc 1972); *Tate v. Giunta,* 413 S.W.2d 200 (Mo.1967).

In *Highfill v. Brown,* 340 S.W.2d 656 (Mo. banc 1960), the trial court's action in granting plaintiff's motion for new trial was reversed and the case remanded with instructions to grant judgment for defendants. Plaintiff had contended in his motion that defendants' verdict-directing instruction submitting the issue of contributory negligence was prejudicially erroneous. The supreme court held that "[w]hether the instruction was erroneous and, therefore, prejudicial was a question of law to be determined upon the record presented. No fact question was involved." *Highfill,* id., 664. Therefore, the granting of a new trial was not within the discretion of the trial court. Accord, *Wims, supra.*

Likewise, in this case, the trial court's action on the *motion for new trial* involved the application of legal principles rather than the exercise of judicial discretion. The issue before this court is not the propriety of an exercise of discretion but rather whether the granting of the motion for new trial because of errors in the instruction rested on a valid or erroneous view of the law. Compare *State ex rel. Mather v. Carnes,* 551 S.W.2d 272 (Mo.App.1977).

In the interest of clarity, plaintiff's points in his motion for new trial will be treated out of order.

I. Was plaintiff under a duty of lookout? (Ground No. 8).

■ Before a plaintiff can recover on a charge of primary negligence, the law requires that he exercise due care to discover and avoid the danger created by defendant's negligence. *Hamilton v. Laclede Electric Cooperative,* 294 S.W.2d 11 (Mo. 1956); *Wells v. Wachtelborn,* 410 S.W.2d 558 (Mo.App.1966).

'The duty to exercise ordinary care to avoid injury includes the duty to exercise ordinary care to observe and appreciate danger or threatened danger. A person is required to make reasonable use of his faculties of sight, hearing, and intelligence to discover dangers and conditions of danger to which he is or might become exposed, and one injured as a result of his failure to use his faculties to observe and discover a danger which would have been observed and discovered by an ordinarily prudent person is guilty of contributory negligence.'

*Chisenall v. Thompson,* 363 Mo. 538, 543, 252 S.W.2d 335, 337–338 (1952), quoting 65 C.J.S. Negligence § 120.

■ The minority of the plaintiff does not preclude assertion of the defense of contributory negligence. Rather, the standard for judging the conduct alleged to be contributory negligence is altered from the objective standard of the ordinarily prudent person to the subjective standard of the level of care ordinarily exercised by one of the age, intelligence, discretion, knowledge

and experience of the particular plaintiff under the same or similar circumstances. *Carter v. Boys' Club of Greater Kansas City,* 552 S.W.2d 327, 332 (Mo.App.1977). Thus, in applying the duty of lookout to a minor plaintiff, the circumstances surrounding the accident, as well as the minor's age, intelligence, knowledge and experience, must be considered and analyzed.

■ The accident occurred during the daylight hours of a warm, calm fall day. Plaintiff's and defendant's neighborhood witnesses indicated plaintiff and his companions may have been in the tree for nearly two hours. Although Dorrin stated he never climbed above the primary wire and remained in the same position, both neighborhood witnesses placed him above the wires and witness Hagar believed the three changed their positions while they were in the tree. Even accepting plaintiff's statement of his position in the tree, his head was one to two feet above and facing the wire and less than three feet west of it. Plaintiff testified that he looked down toward the wire at least for a time to observe the young girl on the road below. Further, the evidence and opinions as to how the accident occurred all are consistent with, or premised on, movement by plaintiff *toward* the wires. While the tree was in leaf, Dorrin conceded, and the photos admitted into evidence at trial confirm, there were fewer limbs and less foliage on the side of the tree facing Mason Road and the electric wires. Finally, the obvious must be remembered: Plaintiff was in a tree, at a height of thirty-five feet, along the side of a major road—a place where wires are frequently strung.

The accident occurred on September 26, 1974, four days before plaintiff's nineteenth birthday. He was a freshman at Meramec Junior College. He had climbed trees before and had participated in rope climbing and rappelling. He knew electricity was dangerous and that it was transmitted on wires strung on poles. He had walked under the wires when he and his two companions entered Queeny Park.

As a part of his case, plaintiff introduced the deposition of Harry Slyman, a seventeen year old boy who lived in the neighboring Mason Valley subdivision. Slyman had climbed the tree a number of times and had seen the electric wires on those occasions. Clerk and Rea, Dorrin's two companions, testified they could see the wire at the moment of his injury.

After considering the circumstances of the accident and the characteristics and abilities of the minor plaintiff, it must be concluded that substantial evidence was produced to support submission of the issue of whether plaintiff, in the exercise of proper care for his safety, could and should have seen the wires and the danger they presented in time to have prevented his ensuing injury. *Young v. Grotsky,* 459 S.W.2d 306, 309 (Mo.1970). No error was committed in submitting the issue to the jury. *Rickman v. Sauerwein,* 470 S.W.2d 487, 489 (Mo. 1971).

II. Does Paragraph First violate Rule 70.02? (Ground No. 2).

■ Rule 70.02(a) provides in relevant part: "All instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts."

In his motion for new trial, plaintiff did not explain how the instruction violated the rule; he merely claimed the paragraph submitted evidentiary facts and was not simple, brief and free from argument. The question of whether this is a sufficiently specific objection under Rule 78.07 will be passed over, and the claim addressed on its merits.

The language of Paragraph First is simple and easily understood. The words chosen are neither argumentative nor unduly favorable to defendant. There is no embellishment. The paragraph, and the instruction as a whole, is brief in comparison to the instructions found in the older pre-MAI cases, where the instruction frequently covered an entire page of the opinion, contained all of the evidentiary facts supporting the submission, and served as the parties' "written argument." *Shackman v. Lincoln Property Co.,* 556 S.W.2d 50, 53 (Mo.App.1977).

Equally important, the language of the paragraph was necessary to submit to the jury the ultimate issues of knowledge and appreciation of the danger and risk of injury.

"Knowledge and appreciation of the danger and risk of injury, actual or imputed, is essential in order that a child may be guilty of contributory negligence. Mere knowledge that injury might result, without appreciation of the risk of injury to which his conduct exposed him, is not sufficient." *Turner v. City of Moberly,* 224 Mo.App. 683, 685, 26 S.W.2d 997, 998 (Mo.App.1930). See, also *Koirtyohan v. Washington Plumbing & Heating Co.,* 471 S.W.2d 217, 221 (Mo.1971); *Bledsoe v. Northside Supply & Development Co.,* 429 S.W.2d 727 (Mo.1968); *Van Dyke v. Major Tractor & Equipment Co.,* 557 S.W.2d 11, 14 (Mo.App.1977).

The supreme court reversed a judgment for defendant in *Davidson v. International Shoe Company,* 427 S.W.2d 421 (Mo.1968) on the ground, among others, that the contributory negligence instruction submitted by defendant failed to require a finding of knowledge and appreciation of the danger on plaintiff's part as a necessary element of contributory negligence. See also, *Bledsoe, supra*; and *Van Dyke, supra.* The cited cases show Paragraph First, in proper language, submitted the ultimate facts necessary for a finding of contributory negligence. This attack on Paragraph First is rejected.

III. Does the instruction contain a double submission of the duty of lookout, thus overemphasizing plaintiff's duty to observe and know of the wire's presence? (Ground No. 1).

Plaintiff contended in his motion that the instruction overemphasized the duty of lookout by submitting that duty in both Paragraphs First and Second.

■ Paragraph First required the jury to find the ultimate issues of knowledge and appreciation of the danger and risk of injury, or, in other words, that plaintiff was under a duty to keep a lookout and had an obligation to make use of his faculties to observe and avoid danger. As *Davidson, supra, Bledsoe, supra,* and *Van Dyke, supra,* note, it would have been reversible error to fail to submit the ultimate issues of knowledge and appreciation of risk. Paragraph Second then posed the issue of whether plaintiff exercised due care or breached his duty and submitted conduct on his part which involved an undue risk of harm. Paragraph Third required the jury to find plaintiff's breach of duty was negligent and Paragraph Fourth presented the issue of whether plaintiff's negligence was the proximate cause of his injury.

■ The instruction thus submitted, in order, the issues of duty, negligent breach of duty and proximate cause. The issue of lookout was not unduly emphasized because the instruction properly required separate findings or conclusions that plaintiff was under that duty (Paragraph First) and then, by his conduct, breached that duty (Paragraph Second). The presentation of these separate issues was essential for a finding of contributory negligence. There was no double submission and no overemphasis of the duty of lookout.

IV. Did Paragraph First err in using "plaintiff knew or by the use of ordinary care *could* have known," instead of "plaintiff knew or by the use of ordinary care *should* have known," in submitting the issue of plaintiff's constructive knowledge and appreciation of the danger presented by the uninsulated wire? (Ground No. 3).

Plaintiff contended in his motion for new trial that Paragraph First misstated the applicable legal standard for determining the ultimate issue of his constructive knowledge by twice using the phrase "could have known." Paragraph First read:

First, Plaintiff knew or by the use of ordinary care could have known of the presence of an electric wire near the tree and knew or by the use of ordinary care could have known there was a reasonable likelihood of injury to himself if his body contacted said wire . . . ..

In everyday use the words "could" and "should" do have different meanings. "Should" implies the "idea of obligation; it

is the past tense of 'shall' which implies 'owes, ought to, must' (Webster's 3rd Internat. Dict.)." *Burrell v. Mayfair-Lennox Hotels, Inc.*, 442 S.W.2d 47, 54 (Mo.1969). "Could," on the other hand, "denotes mere 'capability' and is often used as meaning 'might' " or "a mere ability to do or make." *Burrell*, id., 54.

Neither the case law nor MAI Instructions offer a clear-cut answer to this question. Some cases use the word "should" in their approved instructions or their discussion of the issue of constructive knowledge;[1] other cases use "could."[2] Some MAI instructions approve the use of the word "could" for constructive knowledge submission;[3] other instructions use "should."[4] No meaningful criteria for selecting "could" in some circumstances and "should" in others were discovered in reading the cases, instructions and notes on use.

To add to the confusion, some cases use "could" and "should" in tandem in discussing constructive knowledge.[5] Other cases use "should" in discussing or approving instructions using "could."[6] Some approved instructions use both words in different portions of the same instruction.[7] One case used "should" in defendant's verdict-director and "could" in plaintiff's.[8] The encyclopedias also use both words, again, sometimes in tandem.[9]

In *White v. Gallion*, 532 S.W.2d 769 (Mo. App.1975), plaintiff's verdict-director MAI (17.14 modified) submitted the issue of defendant's constructive knowledge of plaintiff's position of immediate danger by the words " ' "could have known," ' " at 770. Defendant's counsel contended in final argument that these words did not impose a duty of lookout. In holding that argument to be reversible error, the court cited the Notes on Use, No. 3 for MAI 17.14, which equated the phrase " 'could have known' " with lookout. The court agreed those words should be used when there is a duty of lookout.

*White*, therefore, provides authority for approving defendant's choice of the word "could" in submitting the issue of constructive knowledge. The issue of "could" as opposed to "should" is, however, a false issue under the circumstances of this case. As noted above, every person is under an obligation to use ordinary care (or appropriate care in the case of a minor) for his own protection and is under a duty to make ordinary use of his faculties of sight, hearing and intelligence to avoid his own injury. *Wells, supra*. These duties place plaintiff under an obligation to see and avoid that which is capable of being seen. It is the opportunity to appreciate peril which bars a plaintiff from recovery for defendant's negligence. *Bridges v. Arkansas-Missouri Power Company*, 410 S.W.2d

1. *Cover v. Phillips Pipe Line Company*, 454 S.W.2d 507 (Mo.1970); *Turpin v. Shoemaker*, 427 S.W.2d 485 (Mo.1968); *Carey v. Crawford Electric Cooperative, Inc.*, 347 S.W.2d 184 (Mo. 1961); *Shackman, supra*, 53.

2. *White v. Gallion*, 532 S.W.2d 769 (Mo.App. 1975); *Erbes v. Union Electric Company*, 353 S.W.2d 659 (Mo.1962); *Thompson v. Quincy, O. & K. C. R. Co.*, 18 S.W.2d 401 (Mo.1929); *Kewanee Oil Company v. Remmert-Werner, Inc.*, 508 S.W.2d 23 (Mo.App.1974); *Creager v. Chilson*, 453 S.W.2d 941 (Mo.1970); *Mayfield v. Kansas City Southern Ry. Co.*, 337 Mo. 79, 85 S.W.2d 116 (1935); *Kraus v. Auxvasse Stone & Gravel Company*, 444 S.W.2d 434 (Mo. 1969).

3. MAI Instructions 17.04, 17.14, 17.15, 22.03, 33.06(1), (2), (3) and (6).

4. MAI Instructions 22.01, 22.02, 22.04, 22.05.

5. *Young v. Grotsky*, 459 S.W.2d 306 (Mo.1970); *Erbes v. Union Electric Company, supra*; *Thompson v. Quincy, O. & K. C. R. Co., supra*.

6. *Erbes v. Union Electric Company, supra*; *Kewanee Oil Company v. Remmert-Werner, Inc., supra*; or "could" in discussing a "should" instruction, *Butler v. Phillips Pipe Line Company*, 554 S.W.2d 449, 450–451 (Mo.App.1977).

7. *Erbes, supra*; *Thompson, supra*.

8. *Koirtyohann v. Washington Plumbing & Heating Co.*, 494 S.W.2d 665 (Mo.App.1973).

9. "Could": 57 Am.Jur.2d Negligence, § 338; "should": 57 Am.Jur.2d Negligence, §§ 323, 325, 332; 65A C.J.S. Negligence § 121; should or could or should and could: 57 Am.Jur.2d Negligence, § 332 and 65A C.J.S. Negligence § 120(1).

106, 111 (Mo.App.1966). What is capable of being seen and appreciated ought to be seen and appreciated. If plaintiff was capable of knowing of the presence of the wire, and here he was, then, in the exercise of ordinary care for his own safety, he was obligated to have known of its presence. If plaintiff was under a duty to use his sight and intelligence and to exercise ordinary care, then nothing needed to be added to the ability to see and appreciate danger before an obligation to see and appreciate it arose. The use of the word "could" properly raised the issue of plaintiff's constructive knowledge and appreciation.

■■■■ The purpose of instructions is to guide the jury in reaching a just verdict by informing the jurors of the law as it is to be applied to the evidence they have heard. *White v. Kansas City Public Service Co.*, 347 Mo. 895, 149 S.W.2d 375 (Mo.1941); *White v. Metropolitan Life Ins. Co.*, 218 S.W.2d 795 (Mo.App.1949). An appellate court must review allegedly offending language in the light of the entire instruction. *Arthur v. Royse*, 574 S.W.2d 22, 24 (Mo.App.1978). Given the facts under consideration here, the instruction was a proper guide to the jury as to the applicable law. No error was committed through its use.

■■■■ V. Did the instruction, by submitting plaintiff "caused his body to contact the electric wire," allow the jury to consider conduct by plaintiff which was not the proximate cause of his injury? (Ground No. 4).

Plaintiff's argument, as clarified by his brief, is that defendant presented evidence which would have allowed the jury to find plaintiff fell from the tree into the wire or was on a branch which broke and dropped him onto the wire. By submitting "caused his body to contact," defendant's instruction, it is argued, allowed the jury to consider conduct which was not the proximate cause of plaintiff's injury. [See *Williams v. Springfield Gas and Electric Co.*, 274 Mo. 1, 202 S.W. 1, 2 (1918), in which case the supreme court cited with approval *Thompson v. Slater*, 197 Mo.App. 247, 193 S.W. 971 (1917), where a boy, who was sitting on a limb which broke, fell onto uninsulated wires. It was held in *Thompson* that the noninsulation and not the fall was the proximate cause of his injuries.]

"To determine the meaning of an instruction its entirety must be considered, not just isolated paragraphs, words or phrases . . . ." *Hart v. City of Butler*, 393 S.W.2d 568, 577 (Mo.1965). When this challenged phrase is read in the light of the whole instruction, plaintiff's point must be rejected.

Paragraph First required the jury to find plaintiff knew and appreciated (actually or constructively) the danger and risk of contact with the electric wires. Paragraph Third required that the jury find plaintiff's action in causing his body to contact the wire, as submitted in Paragraph Second, was negligent. Paragraph Fourth required a finding that his negligent conduct was the proximate cause of his injury. Negligence was then properly defined for a minor.

In finding contributory negligence the jury was thus limited, in light of the entire instruction, to negligent contact with the electric wire. There was no roving commission because simple contact with the wire through nonnegligent actions would not have been sufficient to support a finding of contributory negligence.

Plaintiff has not only isolated the challenged phrase from the whole of the instruction, he has also converted the words "caused his body to contact the electric wire" into "contacted the electric wire." "Caused his body" clearly implies volitional conduct on plaintiff's part which brought him into contact with the wire. A simple fall cannot be categorized as "caused his body to contact."

This view is supported by plaintiff's own evidence. Plaintiff's expert witness and his medical witness both believed his burns were caused by contact between his back and the electric wire. Plaintiff's expert held the opinion plaintiff came into contact with the wire while he was climbing or circling around the limb. Plaintiff specifically denied falling onto the wire.

Further, language similar to that challenged here was used and approved in *Robinett v. Kansas City Power & Light Compa-*

*ny*, 484 S.W.2d 506, 510 (Mo.App.1972), where plaintiff either failed to keep a careful lookout for the electric wire or "caused or permitted the truck to contact the *electric* wire . . . ." The court specifically rejected the argument that "caused or permitted the truck to contact the *electric* wire" amounted to submission of general negligence.

The challenged language was narrowly focused, by the entire instruction and the facts of the case, on the volitional conduct of plaintiff in causing his body to contact the electric wire. Speculative, non-proximate cause contact was sufficiently excluded.

VI. Did the language "caused his body to contact the wire" amount to a roving commission and allow the jury to find in favor of defendant if "any" of plaintiff's damages were the result of any conduct of plaintiff which caused his body to touch the wire? (Ground No. 5).

The "roving commission" portion of this point was treated in V above.

Plaintiff appears to argue further that if the jury found he was negligent in falling out of the tree, the instruction authorized a finding for defendant if plaintiff suffered any injuries from the fall, as opposed to injuries suffered from contact with the electric wire.

Analysis of the instruction has shown it properly excluded consideration of a fall as negligent conduct proximately causing plaintiff's injury. Further, MAI Instructions 32.01, 32.02, 32.03, 32.04 and 32.05 use language similar or identical to that found in Paragraph Fourth of defendant's verdict director. The challenged language is, in fact, taken verbatim from MAI 32.01. There was no error.

VII and VIII. (Grounds No. 6 and 7).

Plaintiff's final two challenges—that the instruction did not require the jury to find the electrical burns were proximately caused by plaintiff's negligence in causing his body to contact the wire and that the instruction gave the jury a roving commission to speculate on what conduct of the plaintiff constituted negligence—have been sufficiently answered in the foregoing analysis. In connection with the latter point, Paragraph Third restricted the jury's consideration to the specific grounds of negligence hypothesized in Paragraph Second. The language referred the jury back to Paragraph Second and thereby limited their consideration to the conduct submitted. Compare *Gousetis v. Bange*, 425 S.W.2d 91 (Mo.1968); *Pollard, supra; State ex rel. Burgess v. Neaf*, 439 S.W.2d 190 (Mo.App. 1969).

Finally, the other objections raised in plaintiff's motion for a new trial have been reviewed. *Eilers v. Union Electric Company*, 386 S.W.2d 427, 431[8] (Mo.App.1964). An extended analysis of those issues is not necessary. The record in the case and the applicable rules of law indicate they were properly overruled by the trial court.

Therefore, the cause is reversed and remanded with instructions to reinstate the verdict for the defendant and enter final judgment thereon.

WEIER, C. J., and SMITH, J., concur.